UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.                                                                **15CR148A**

**Report
&
Recommendation**

ARAFAT M. NAGI,

Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 13).  The instant matter before the Court is a motion of defendant (Docket No. 31) to dismiss the Indictment and to suppress evidence.  This motion also sought discovery and other non-dispositive relief[1] (id.); so much of that motion will be addressed in a separate Order.  Given the allegations in this case, defendant's motion for a Bill of Particulars will be addressed herein. The Government responded on May 23, 2016 (Docket No. 35), and this motion was argued on June 9, 2016 (Docket No. 36; see Docket Nos. 33, 24, 27, 30), and this Court reserved decision on June 9, 2016 (Docket No. 36).

## BACKGROUND

Defendant is charged with attempting to provide material support and resources to a foreign terrorist organization (sometimes referred to as an "FTO"), in violation of 18 U.S.C.

---

[1]Defendant also seeks the filing of a Bill of Particulars; production of discovery; production of Giglio material and Jencks Act material; identification of informants; and identification of statements.

§ 2339B(a)(1) (Docket No. 12, Indictment).  It is alleged in Count 1 that, from November 2012

to August 2014, defendant attempted to provide material support to the Islamic State of Iraq and

the Levant ("ISIL" also known as the Islamic State of Iraq and Syria, or "ISIS," hereinafter

referred to as "ISIS") by providing himself as personnel.  He allegedly knew that ISIS was

designated as a foreign terrorist organization, which had engaged in and was engaging in terror

activities as defined in 8 U.S.C. § 1182(a)(3)(B), and had engaged and was engaging in

terrorism, as defined in 22 U.S.C. § 2656f(d)(2) (id., Count 1).  No further detail is given on how

defendant attempted to furnish himself to ISIS.

Count 2 of the Indictment alleges that defendant attempted to provide material support to

a foreign terrorist organization, from early 2015 to July 29, 2015, in violation of 18 U.S.C.

§ 2339B(a)(1) (id., Count 2).

*Criminal Complaint (Docket No. 2)*

The Criminal Complaint filed in this action, however, provides extensive detail of

defendant's actions leading up to his arrest.  In support of the assertion of probable cause to

arrest defendant, Federal Bureau of Investigation Special Agent Amanda Pike stated that

confidential informant "USPER1," a person previously convicted of terrorism offenses who was

now cooperating with authorities, was interviewed by the Federal Bureau of Investigation

("FBI") and stated that defendant has talked about jihad to various people in Lackawanna, New

York (Docket No. 2, Compl. ¶ 8).  USPER1 reported that, in August 2014, defendant traveled to

Turkey, which was confirmed by searches of United States Customs and Border Protection

records; these records reveal that defendant stayed in Turkey for ten days and then traveled to

Yemen before returning to the United States (id. ¶¶ 9, 12, 13).  During an interview upon his

2

return to the United States with U.S. Customs and Border Protection agents, defendant confirmed

his travel to Turkey and Yemen but denied supporting ISIS, al Qaeda, or other mujahedeen

groups (id. ¶ 13).  Agent Pike declared that this denial is inconsistent with defendant's statements

on Twitter, conversations he had, and web searches performed on his electronic devices (id.).  In

all, defendant made three trips to Turkey, in 2012, 2013, and 2014, with stops in Yemen and

Syria (id. ¶¶ 9, 12, 13, 14, 18, 31).

A search of defendant's electronic devices and the text messages from those devices

reveals that defendant had a text exchange in 2013 possibly with his cousin who asked how

defendant's trip to Turkey and Syria went (id. ¶ 16); this is the first reference to travel to Syria.

Defendant purportedly responded that he had to leave early due to his gallbladder (id.).  When

asked in another text why he was going into the Middle East and its wars, defendant replied that

he wanted to help the Syrian people and that his "heart bleeds for them (. . .) Bad" (id. ¶ 17).

Agent Pike describes defendant's purchases from eBay of tactical vest, army combat

shirt, body armor, the Shahada flag (a black flag containing the Islamic creed and a flag known

to be used as a symbol by Islamic terror organizations), and combat boots before this

October 2012 trip to Turkey (id. ¶¶ 18-19).  Defendant's shipping address for eBay was his home

at 151 Olcott Street, Buffalo, New York (id. ¶ 19).

Agents searched social media for defendant's activity and found a Twitter account

associated with defendant's email address contained postings in Arabic (id. ¶¶ 20-22).  Two

posts (translated by an FBI linguist) stated that defendant gave his pledge "to hear and obey Abu

Bakr al-Baghdadi," the so-called Caliph of ISIS, or pledged allegiance to the "prince of the

believers al-Baghdadi" (id. ¶ 22), with Agent Pike concluding that defendant there had pledged

allegiance to ISIS and al-Baghdadi (id.).  Some tweets included photographs showing ISIS

fighters and al-Baghdadi (id. ¶ 23), severed heads, and ISIS prisoners about to be executed (id.

¶¶ 26-29).  The Twitter account was deactivated by September 25, 2014, with Agent Pike

believing this was done by defendant upon his reentry into the United States and interview with

Customs and Border Protection officers as an attempt to shield his prior pledge of allegiance

from law enforcement (id. ¶ 30).

From another text exchange between defendant and a person believed to be his sister

while defendant was in Turkey in 2014, Agent Pike concludes that defendant was attempting to

enter Syria (id. ¶¶ 35-37; see id. ¶¶ 41-43 (search of electronic devices reveals defendant's

attempts to travel to southernmost province of Hatay, Turkey, near the border with Syria)).  A

review of defendant's web searches "also revealed several maps which appear to show ISIL

controlled border crossings and strongholds" in Syria (id. ¶ 46, Figure 8).

The FBI interviewed USPER2, described as an associate of defendant (id. ¶ 47), who

stated that in November 2014 defendant stated that he had pledged allegiance to ISIS leader al-

Baghdadi (id. ¶ 49).  In February 2015, defendant told USPER2 that he intended to travel to

Yemen, Turkey, then to Syria (id. ¶ 52).

What is not known, however, is how much of this information was provided to the Grand

Jury prior to charging defendant.

*Motion to Dismiss the Indictment*

In his motion to dismiss the Indictment, defendant argues that these charges violate his

First Amendment rights of freedom of speech and freedom of association by making it illegal for

any citizen to provide, attempt or conspire to provide material support to a foreign terrorist

organization (Docket No. 31, Def. Atty. Affirm. ¶¶ 5-8).  The offending conduct is providing oneself as "personnel" to a terrorist organization (id. ¶¶ 10-13) and defendant argues that offering oneself is a protected First Amendment activity (id. ¶ 15).  He concludes that the Indictment should be dismissed as being both facially unconstitutional and unconstitutional as applied to defendant (id. ¶ 16; see id. ¶ 17).

The Government responds that the Indictment sufficiently asserts the elements under § 2339B and determining the issue at this stage of the proceeding is a matter of law and does not depend upon the sufficiency of evidence (Docket No. 35, Gov't Response at 4, 3; see id. at 6 n.3 (Government not making full proffer at this stage, but contends that sufficient evidence shown that defendant's First Amendment challenge should be rejected)).  The Government claims that the evidence at trial would show that defendant intended to volunteer for ISIL as a fighter, "knew and intended that he would obey ISIL's leadership, and knew well that ISIL engages in terrorism" (id. at 6).

*Motion to Suppress*

Defendant also moves to suppress physical evidence seized during the execution of the search and arrest warrants at 151 Olcott Street, Lackawanna, New York, on July 28, 2015 (Docket No. 31, Def. Motion ¶¶ 83-84, 87).  He contends that there was insufficient probable cause to believe that evidence would be found at that address (id. ¶¶ 89-90, 93-95), concluding that the fruit of the search should be suppressed (id. ¶ 96).  Defendant (through his counsel's affidavit, id. ¶ 85), asserted standing to seek suppression.

After disputing whether defendant (as opposed to defense counsel) asserted that he had standing (through his own affidavit or one from a person with personal knowledge) (Docket

No. 35, Gov't Response at 22-23), the Government counters that defendant was arrested on the next day and the search warrant was executed at defendant's residence (id. at 1; see Docket No. 3, Order of July 29, 2015).  During this search, agents seized cell phones, laptop computers, finding on one computer a photograph of defendant wearing combat gear and standing in front of a Shahada flag (Docket No. 35, Gov't Response at 2 & n.1).  Also found in a relative's house was a sword and a Shahada flag that defendant stored there (id. at 2).

The search warrant application (as was the Criminal Complaint, Docket No. 2) was based upon the statements of confidential informants "USPER1" and "USPER2" (Docket No. 31, Def. Atty. Affirm. ¶ 89).  Defendant contends, however, that the probable cause basis for this warrant was "pure conjecture and assumptions not grounded in fact or knowledge" (id. ¶ 90), arguing that the warrant application failed to provide probable cause that evidence exists in the premises which support or establish a violation of § 2339B(a)(1) (id. ¶ 93) with nothing in the application tying the offense to this particular premises (id. ¶ 94).  Absent probable cause, defendant concludes that the fruit of the search upon execution of that warrant should be suppressed (id. ¶¶ 95, 96), see United States v. Wong Sun, 371 U.S. 471, 487 (1963).

The Government responds that sufficient probable cause exists for the search (Docket No. 35, Gov't Response at 23-25).  Alternatively, the Government invokes the good faith reliance upon the search warrant standard of United States v. Leon, 468 U.S. 897, 906 (1984) (id. at 25-26).

## DISCUSSION

Given the common arguments for the suppression issue and for dismissal of this Indictment based upon the nature of the offense charged, this Court will consider defendant's

rights and § 2339B.  The evidentiary limitation of a motion to dismiss the Indictment and the

constitutional arguments in that motion also calls upon consideration of defendant's motion for

the filing of a Bill of Particulars.

I.      Dismissal of Indictment

    A.      Sufficiency of an Indictment

    The Indictment must set forth elements of the offense to ensure that a defendant is

charged only with the facts found by a Grand Jury, see Russell v. United States, 369 U.S. 749,

770 (1962); see also Schmuck v. United States, 489 U.S. 705, 718 (1983) (constitutional right to

notice of offense charged).  Otherwise, a defendant "could then be convicted on the basis of facts

not found by, and perhaps not even presented to, the grand jury which indicted him," Russell,

supra, 369 U.S. at 770.  Specific factual allegations must be included that "apprise the defendant

of what he must be prepared to meet," Cochran v. United States, 157 U.S. 286, 290 (1895); see

Russell, supra, 369 U.S. at 751-52, 788 (Indictment failed to specify subject matter Congress

asked in prosecution for contempt of Congress, 2 U.S.C. § 192, was defective).  Where the crime

is clear, additional facts are not required, United States v. Resendiz-Ponce, 549 U.S. 102, 107

(2007).  A challenge to the specificity of an Indictment can be met by the filing of a Bill of

Particulars, Fed. R. Cr. P. 7(f).  While not curing a defective Indictment, a Bill of Particulars

with an Indictment enables the Court to "look to the record as a whole in determining whether

the defendant is protected from double jeopardy in a subsequent prosecution and whether the

defendant has had an adequate opportunity to prepare his defense," United States v. Walsh,

194 F.3d 37, 45 (2d Cir. 1999).  See generally Gordon Mehler, John Gleeson & David C. James,

Federal Criminal Practice:  A Second Circuit Handbook § 25-3, at 462-63 (16th ed. 2016).

Here, the Indictment makes a bare assertion that defendant attempted to provide himself as material support to a FTO, without detailing (as is done in the Criminal Complaint, Docket No. 2, and to a degree in the present proffer by the Government, Docket No. 35, Gov't Response at 6-7) how that occurred.  But that Criminal Complaint is merely the averment of an FBI agent and not facts necessarily found by the Grand Jury in indicting defendant.

A stark contrast in pleading is the Indictment of Rafiq Sabir and others discussed in United States v. Shah, 474 F. Supp. 2d 492, 493-94 (S.D.N.Y. 2007), and whose convictions were upheld in United States v. Farhane, 634 F.3d 127 (2d Cir.), cert. denied sub nom. Sabir v. United States, 565 U.S. ____, 132 S.Ct. 833 (2011); see Shah, supra, 474 F. Supp. 2d at 495-500 (denying motion to dismiss Indictment on vagueness challenge).  In Shah, Count One of that Indictment charged defendants with conspiracy to provide material support to a FTO, specifying three types of support provided (individuals to work under al Qaeda, instruction and teaching to further the objectives of al Qaeda, and advice and assistance derived from scientific, technical, and other specialized knowledge) and alleging that Sabir "agreed to provide medical support to wounded jihadists," Shah, supra, 474 F. Supp. 2d at 493-94, while Count Two charged a substantive violation of § 2339B in providing these categories of material support and in Sabir agreeing to furnish medical support to jihadists, id. at 494; see also Farhane, supra, 634 F.3d at 134.

In Nagi's case, all that is alleged in the Indictment that he attempted to provide personnel (namely himself) to a FTO, without more alleged.  Defendant also moved for filing of a Bill of Particulars and that motion is discussed below.

B.     Statute at Issue

Section 2339B(a)(1) of Title 18, U.S. Code, provides

> Whoever knowingly provides material support or resources to a foreign terrorist organization, **or attempts** or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life. To violate this paragraph, a person must have knowledge that the organization is a designated terrorist organization (as defined in subsection (g)(6)), that the organization has engaged or engages in terrorist activity (as defined in section 212(a)(3)(B) of the Immigration and Nationality Act), or that the organization has engaged or engages in terrorism (as defined in section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989).

18 U.S.C. § 2339B(a)(1) (emphasis added).  The elements of violating this section are providing material support or resources, here personnel (including that of defendant alone, 18 U.S.C. § 2339A(b); see 18 U.S.C. § 2339B(g)(4)), to a terrorist organization, and that the defendant knew that the organization was a designated terrorist organization and that the terrorist organization engaged or had engaged in terrorist activities (see Docket No. 35, Gov't Response at 5).  The act also is not to be "construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment of the Constitution of the United States," 18 U.S.C. § 2339B(i).

C.     Facial Constitutionality of Statute

Other courts have upheld the constitutionality of this section, see Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) (rejecting First Amendment vagueness or overbreadth challenges to section); Farhane, supra, 634 F.3d at 138 (§ 2339B narrowly drawn to cover speech to, under direction of, or in coordination with foreign groups that the speaker knew were terrorist organizations), and Indictments alleging violations of that section, United States v. Taleb-Jedi, 566 F. Supp. 2d 157, 182, 176 (E.D.N.Y. 2008) (defendant found to have created an employment

9

relationship with a foreign terrorist organization).  As the Second Circuit found in <u>Farhane</u>,

<u>supra</u>, 634 F.3d at 138, this statute "does not prohibit simple membership in a terrorist

organization.  Rather, the statute prohibits the knowing provision of material support to a known

terrorist organization.  Proof of such provision (whether actual, attempted, or conspiratorial)

together with the dual knowledge elements of the statute is sufficient to satisfy the personal guilt

requirement of due process," <u>id.</u>

Thus, the Act has been upheld as not overly broad under the First Amendment or

violative of due process under the Fifth Amendment.  Defendant's motion to dismiss the

Indictment on facial grounds (Docket No. 31) should be **denied**.

D.      As Applied Challenge and Attempt to Provide Material Support

As applied to defendant, defendant contends that his conduct was purely speech and

hence protected by the First Amendment from criminal prosecution.  But the Government

proffers (through the Criminal Complaint and its arguments opposing this motion) various acts

of conduct (travel by defendant to Turkey with the intention to enter Syria, acquisition of body

armor and other equipment) that goes beyond speech.

A conviction for an attempt to provide material support to a known terrorist organization

"requires proof that a defendant (a) had the intent to commit the object crime and (b) engaged in

conduct amounting to a <u>substantial step</u> toward its commission," <u>Farhane</u>, <u>supra</u>, 634 F.3d at 145

(emphasis added).  A "substantial step," in turn, has been held to "be 'something more than mere

preparation, yet may be less than the act necessary before the actual commission of the

substantive crime,'" <u>id.</u> at 147 (quoting <u>United States v. Manley</u>, 632 F.2d 978, 987 (2d Cir.

1980)).

In <u>Farhane</u>, defendant Sabir met with a purported al Qaeda member, swore allegiance to al Qaeda (or the "bayat"), promising to treat wounded al Qaeda members, and the Second Circuit concluded these facts established sufficient proof of a substantial step toward providing material support (hence attempted provision of that support), <u>id.</u> at 149, 150.  By that defendant committing to work at al Qaeda's direction, Sabir provided personnel (himself) to support a foreign terrorist organization, <u>id.</u> at 149, and by his oath of allegiance to al Qaeda "evidenced more than 'mere membership' in that terrorist organization," <u>id.</u> at 150 (quoting <u>Humanitarian Law Project</u>, <u>supra</u>, 561 U.S. at 18-19.  The Second Circuit concluded that "Sabir crossed the line from simply professing radical beliefs or joining a radical organization to attempting a crime, specifically, Sabir's provision of himself as personnel to work under the direction and control of al Qaeda," <u>id.</u>

As noted in <u>Farhane</u>, <u>supra</u>, the identification of a substantial step is one of degree, <u>id.</u> at 147 (quoting <u>United States v. Coplon</u>, 185 F.2d 629, 633 (2d Cir. 1950) (L. Hand, J.) (quoting in turn <u>Commonwealth v. Pease</u>, 177 Mass. 267, 272, 59 N.E. 55, 56 (1901) (Holmes, J.)), varying with the facts of each case, <u>id.</u>  The conduct of providing material support to a foreign terrorist organization involves a range of conduct "that may not be harmful in itself but that may assist, even indirectly, organizations committed to pursuing acts of devastating harm," <u>id.</u> at 148.  The focus of this material support statute is "preventative" in criminalizing the "'aid that makes the attacks more likely to occur,'" <u>id.</u> (quoting <u>Humanitarian Law Project</u>, <u>supra</u>, 561 U.S. at 35).  Thus, a substantial step to provide material support need only provide "support—even benign support—for an organization committed to such harm," <u>id.</u>; <u>see generally Humanitarian Law</u>

Project, supra, 561 U.S. at 29 (congressional finding that any contribution to a foreign terrorist organization facilitates its conduct).

A substantial step toward providing material support and material support each imply more than merely wishing to join a FTO.  Similarly, a person may associate with FTO, become a member, praise the FTO for its terrorist actions without violating § 2339B, but would violate that statute if that person also provided weapons to the FTO, United States v. Marzook, 383 F. Supp. 2d 1056, 1062 (N.D. Ill. 2005) (quoting Boim v. Quaranic Literary Inst. & Holy Land Found. for Relief and Dev., 293 F.3d 1000, 1026 (7th Cir. 2002)).

Here, defendant is effectively charged with self-recruitment and volunteering for ISIS. The proffer and Criminal Complaint indicate that he pledged his allegiance to ISIS and manifested it in the photograph in combat gear before the Shahada flag, various online postings and other actions.  While volunteering yourself to a terrorist organization may provide material support, the issue here is what constitutes an attempt to do so to form criminal liability under § 2339B.

A person's independent action from that of a known terrorist organization, however, is not a violation of this section, 18 U.S.C. § 2339B(h); although such action may be an offense under different laws.  So, where does a person's independent action stop and attempted material support to an FTO (hence criminal liability) begin?

Independent action under § 2339B(h) has been rarely interpreted by courts, cf. United States v. Abdi, 498 F. Supp. 2d 1048, 1063 (S.D. Ohio 2007) (as amended § 2339B makes clear prosecution is limited to suspects who work under a terrorist organization's direction and control, not "for independently engaging in protected expression on behalf of" a foreign terrorist

organization).  Independent action and attempt to provide material support may appear similar or even steps on a common route, but the difference between these concepts depends upon what connection (if any) is made with the foreign terrorist organization.  The terrorist organization may agree with the terror actions (or attempted actions) of the independent actor.  A parallel independent action would intersect with the activities of the terrorist organization if there was some contact, affiliation, or subsequent acknowledgement of the erstwhile independent action. For liability under § 2339B the key is direction or authorization by the foreign terrorist organization.

A review of the few cases under § 2339B may assist in finding where independent action stops and attempting to provide material support begins.

In Farhane, supra, 634 F.3d at 138, 148-49, attempted provision of oneself as personnel was prohibited by § 2339B(h) only when the defendants knowingly provided or attempted to provide selves or others to a foreign terrorist organization to work under that organization's direction or control or to organize, manage, supervise or otherwise direct its operations.  One defendant in that case, Sabir, was a doctor who made himself available on call for al Qaeda, ready to treat wounded mujahedeen in Saudi Arabia, id. at 132, 133, 149.

In United States v. Mehanna, 735 F.3d 32, 41, 43-44 (1st Cir. 2013), a conviction was affirmed where the Government's evidence showed that defendant traveled to Yemen with the specific intention of providing material support to al Qaeda as a recruit.  In United States v. Marzook, supra, 383 F. Supp. 2d at 1057, the defendant was alleged to have recruited an individual to join a foreign terrorist organization, directed that person to go to Israel to take money to the family of an imprisoned terrorist organization member and to scout locations for

possible terrorist attacks.  Whereas in <u>United States v. Assi</u>, 414 F. Supp. 2d 707, 709-10, 711

(E.D. Mich. 2006), on a motion to dismiss a count of the Indictment, that defendant was charged

with attempting to furnish night vision goggles, global positioning modules, and thermal imaging

scopes to a foreign terrorist organization, carrying these items at an international airport on his

way to Lebanon.

In each of these cases, the defendants moved beyond joining or advocacy for a terrorist

organization to furnish (or attempting to furnish) personnel, services, or material to those

organizations under the direction of those organizations, <u>see</u>, <u>e.g.</u>, <u>Shah</u>, <u>supra</u>, 474 F. Supp. 2d at

493 (defendant allegedly provided medical support to wounded jihadists), <u>aff'd</u>, 634 F.3d 127

(2d Cir.), <u>cert. denied</u>, 132 S.Ct. 833 (2011).  Most of these cases also decided this issue after

trial in which the Government proved defendants' culpability; <u>but cf.</u> <u>id.</u> (denying motion to

dismiss Indictment, with issue as one of first impression); <u>Assi</u>, <u>supra</u>, 414 F. Supp. 2d at 711.

Here, this Indictment is being challenged and the Government intentionally offers an incomplete

proffer to support it.

As a pleading, the Indictment is bare bones but sufficient to inform defendant of the

elements of the offense charged if not the particulars of the facts leading to that charge.  The

Criminal Complaint and the Government's partial proffer, however, fill in some factual gaps.

The Government proffers that defendant's Twitter account has him pledging to support Abu

Bakr al-Baghdadi, the leader and self-proclaimed "Caliph" of ISIS; defendant made numerous

Twitter posts of ISIS's terroristic activities; and defendant gave "numerous statements to others

about ISIL's activities and his support of ISIL" (Docket No. 35, Gov't Response at 7 & n.4; <u>see</u>

<u>generally</u> Docket No. 2, Compl.).  The Government contends that the defendant prepared to

14

provide himself to ISIS by purchasing combat gear (including night vision goggles and body armor), by going to a shooting range, by seeking advice of someone who had previously attended a terrorism training camp.  Defendant also traveled to Turkey with plans to enter Syria to join ISIS.  He posed before the Shahada flag with combat gear and a firearm.  The Government also has text messages between defendant and a family member sent before the July 2014 trip to Turkey wherein defendant makes references to possibly never seeing them again.  (Docket No. 35, Gov't Response at 7.)

Given that this Court is not to weigh the sufficiency of the evidence at this stage and that the Government by its own admission has not made a full proffer, determining whether defendant attempted to provide material support (where he was that material support) or whether substantial steps were taken in providing that support is difficult.  The proffer that defendant pledged to support ISIS leadership coupled with his other actions in obtaining combat gear and expressing his knowing support of ISIS and what it does should be deemed sufficient at this stage to **deny** defendant's motion to dismiss the Indictment (Docket No. 31) on First Amendment grounds.  As applied to defendant, defendant contends that his conduct was purely speech and hence protected by the First Amendment.  But this Court agrees with the Government, as shown by the proffer of various acts of conduct (travel by defendant to Turkey with the intention to enter Syria, acquisition of body armor and other equipment) that goes beyond speech.  This all relies upon the proffer, evidence that may not all have been provided to the Grand Jury.

Therefore, as applied to defendant, 18 U.S.C. § 2339B is constitutional and his motion to dismiss the Indictment alleging violations of that statute should be **denied**.  This dismissal,

however, should be **without prejudice** at this time pending the close of the Government's case-in-chief.  Since this motion is not a measure of the sufficiency of the Government's evidence, the ultimate test of whether defendant's actions constituted an attempt to provide material support and whether that can constitutionally be charged depends upon the evidence the Government produces to show defendant's activities and his interaction with ISIS.  As a matter of pleading (which this current motion addresses), the Indictment sufficiently alleges an offense to deny a motion to dismiss it.  But the sufficiency or particularity of that pleading is the subject of defendant's motion for filing of a Bill of Particulars, discussed in Part III, below.

II.      Suppress of Search Warrant-Obtained Evidence

Defendant's suppression arguments rely upon what he considers the conjecture and assumptions that he would possess evidence of his manifest support of ISIS at his home.  Having above rejected one premise of this argument, that defendant's support of ISIS is conjectural, there was **sufficient probable cause to search his house for evidence of criminal activity arising from that support**.  Unlike his motion to dismiss the Indictment, this Court can consider the assertions in the Criminal Complaint and these identify probable cause for a search of defendant's home for evidence of his attempts to provide himself as material assistance to ISIS.  Again, the item of material support here is defendant himself and his willingness to join ISIS and do its bidding.  It is indeed highly likely that he would have in his home evidence of his intention and support.  For example, the eBay deliveries of the items identified in the Complaint (Docket No. 2, ¶ 19 (the military gear)) were delivered to that residence, although defendant later stored the Shahada flag off premises (see Docket No. 35, Gov't Response at 2).  Defendant's motion (Docket No. 31) to suppress the search warrant-obtained evidence should be **denied**.

Given this recommendation, this Court need not reach the <u>Leon</u> good faith reliance upon the search warrant or the sufficiency of defendant's motion in that the defendant (or one knowledgeable of the facts) has established his standing to contest the search.

III.    Bill of Particulars

While the Indictment may facially meet the requirements to avoid dismissal, the constitutional and statutory arguments arising from § 2339B may require more than the bare bones allegation of the elements under that statute.  Defendant seeks a Bill of Particulars for each count as to the date of his alleged attempt, "the conduct and/or statements manifest the alleged intent" to provide material support to a foreign terrorist organization, the overt acts that qualified "as a substantial step toward completion of the alleged offense," (Docket No. 31, Def. Motion ¶ 19).

The Government initially responds that defendant has not met his burden for establishing need for particularity in aiding in his defense or avoiding double jeopardy (Docket No. 35, Gov't Response at 11).  The Government claims that it provided in discovery the search warrant affidavits, electronic materials, photographs and travel documents, and, given this material, particularity of the charges is unwarranted (<u>id.</u>).  The Government declares that defendant is not entitled to the particular date or dates of the alleged attempt to provide material support and that defendant's other requests go to the Government furnishing the theory of its case-in-chief, <u>United States v. Torres</u>, 901 F.2d 205, 234 (2d Cir. 1990) (<u>id.</u> at 12).  Finally, the Government contends that defendant fails to show how any of this assists in the preparation for trial or avoidance of double jeopardy (<u>id.</u>).

Rule 7(f) of the Federal Rules of Criminal Procedure provides that the Court may direct the filing of a Bill of Particulars. Bills of Particulars are to be used only to protect a defendant from double jeopardy and to enable adequate preparation of a defense and to avoid surprise at trial. Torres, supra, 901 F.2d 205. The Government is not obligated to "preview its case or expose its legal theory," United States v. LaMorte, 744 F. Supp. 573 (S.D.N.Y. 1990); United States v. Leonelli, 428 F. Supp. 880 (S.D.N.Y. 1977); nor must it disclose the precise "manner in which the crime charged is alleged to have been committed," United States v. Andrews, 381 F.2d 377 (2d Cir. 1967). Notwithstanding the above, there is a special concern for particularization in conspiracy cases, United States v. Davidoff, 845 F.2d 1151 (2d Cir. 1988), and an attempt to furnish material support to a terrorist organization can be analogized to a conspiracy. As stated above, a Bill of Particulars will not save an otherwise deficient Indictment, Walsh, supra, 194 F.3d at 45; United States v. Panzavecchia, 421 F.3d 440, 442 (5th Cir. 1970), cert. denied, 404 U.S. 966 (1971).

The Second Circuit has held that

> "Moreover, it is of no consequence that the requested information would have required the disclosure of evidence or the theory of the prosecution. While a bill of particulars is not intended, as such, as a means of learning the government's evidence and theories, if necessary to give the defendant enough information about the charge to prepare his defense, it will be required even if the effect is disclosure of evidence or of theories. A district court judge, however, has the discretion to deny a bill of particulars if the information sought by defendant is provided in the indictment or in some acceptable alternate form,"

United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998) (internal quotation marks and citations omitted).

As noted above in discussing the motion to dismiss the Indictment, the charge here is at the frontier between independent action and an attempt to assist a foreign terrorist organization.

Details are needed to determine what defendant did or attempted to do to determine whether he provided the substantial step for furnishing that material support.  Unlike the Indictment in <u>Shah</u>, <u>supra</u>, 474 F. Supp. 2d at 493-94, <u>Farhane</u>, <u>supra</u>, 634 F.3d at 134,the Indictment against this defendant is closer to the contempt of Congress charge in <u>Russell</u>, <u>supra</u>, 369 U.S. 749, where that Indictment failed to specify the congressional inquiry that led to the charge that this defendant failed to answer.  While this Indictment sufficiently alleges an offense, that defendant attempted to provide himself as material support to a FTO, that alone is not enough information for the defendant to defend himself against those counts.  The Criminal Complaint (Docket No. 2) and the Government's limited proffer (Docket No. 35, Gov't Response at 6-7) in response to defendant's motion are more illuminating that the Indictment but that does not definitively provide what the Government's allegations against defendant are and identify which actions are believed to be attempts to provide himself as material support to a foreign terrorist organization.

Upon review of the Indictment, the Court finds that defendant **is entitled** to a Bill of Particulars inasmuch as the defendant is not sufficiently advised of the charges against him to allow for the proper preparation of a defense (particularly, this constitutional challenge to those charges), to avoid surprise at trial, and to protect the defendant from double jeopardy.  The Government should particularize **the conduct and or statements manifesting defendant's intent to assist ISIS; the overt act(s) that constitute substantial step(s) toward completion of the offense of providing material assistance to a foreign terrorist organization**.  Defendant, however, is not entitled to all the points he sought particularized; namely, he is not entitled to have the dates for alleged attempted action (<u>see</u> Docket No. 35, Gov't Response at 12).  From the proffer and the Criminal Complaint's allegations, the alleged activities of defendant to make

19

himself available to ISIS have been going on for years.  Given that he <u>attempted</u> to provide

material support, such attempts may not lend themselves to a precise date or dates.  The Bill of

Particulars (even more than the Indictment itself) hardens the Government into a position.  His

motion for filing of the Bill of Particulars (Docket No. 31) thus is **granted in part and denied in**

**part, as just discussed**.

## CONCLUSION

Based upon the above, it is recommended that so much of defendant's motion to dismiss

the Indictment (Docket No. 31) be **denied** and defendant's suppression motion (<u>id.</u>) should be

**denied**.

Defendant's motion for filing of a Bill of Particulars (<u>id.</u>) is **granted as outlined above**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report &

Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the

Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk**

**of this Court within fourteen (14) days after receipt of a copy of this Report &**

**Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective**

**December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION**

**WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME**

**WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S**

**ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  <u>Thomas v.</u>

Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.


_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge


Dated: Buffalo, New York
June 27, 2016