IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  15-CR-148-A

ARAFAT NAGI,

        Defendant.

# GOVERNMENT'S RESPONSE TO DEFENDANT ARAFAT NAGI'S MOTION TO SUPPRESS THE GMAIL WARRANT

**THE UNITED STATES OF AMERICA**, through its attorney, William J. Hochul, Jr., United States Attorney for the Western District of New York, and Timothy C. Lynch, Assistant United States Attorney, of counsel, hereby files its response to defendant Arafat Nagi's October 6, 2016 motion to suppress the warrant for ARAFAT NAGI's Gmail account (hereinafter, Filing 46).

## I. FACTUAL BACKGROUND

On July 29, 2015, the defendant was arrested and charged a Criminal Complaint with attempting to provide material support to a designated foreign terrorist organization, that is, Islamic State of Iraq and the Levant ("ISIL") a/k/a the Islamic State of Iraq and Syria ("ISIS") a/k/a ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, in violation of Title 18, United States Code, Section 2339B. On the same date, Special Agents with the Federal Bureau of Investigation executed a search warrant at the defendant's residence. During the course of the search of the defendant's residence, agents seized numerous pieces of electronic evidence, including numerous cell phones and several laptops.

A forensic review of one of the laptops from the defendant's residence revealed a photograph of Arafat Nagi, standing in front of the Shahada flag,[1] dressed in combat gear with his face covered and holding what appears to be an AK-47. In addition, from Nagi's relative's house, agents seized a sword and a Shahada flag that Nagi had stored there.

On August 12, 2015, a federal Grand Jury returned a two-count Indictment charging the defendant with two counts of attempting to provide material support to ISIL, in violation of 18 U.S.C. § 2339B.

## II. LEGAL DISCUSSION

### A. SUPPRESSION OF ELECTRONIC EVIDENCE

#### 1. Defendant Has Not Established an Expectation of Privacy

The defendant moves to suppress evidence seized from the following Gmail account: **arafathashidy@gmail.com** (hereinafter, the Gmail account). As an initial matter, the defendant has not made the necessary showing to challenge the issuance of the warrant. To be entitled to an evidentiary hearing, a defendant must make a preliminary showing of facts, which if proved, would necessitate the granting of the relief requested. To meet that burden, the defendant must submit his own affidavit or an affidavit from a person who has personal knowledge of the relevant facts. United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir.

---

[1] The Shahada flag, a black flag typically showing the Islamic creed or "shahada" in white script, expressing "There is no god but Allah, and Muhammad is his messenger." Although not inherently associated with violent jihad, the flag has been known to be commonly adopted for use by jihadist and Islamic terrorist organizations around the world (to include ISIL, Boko Haram, the Taliban, Jabhat al-Nusrah, etc.).

1967). And if an affidavit is submitted, it must be "specific, detailed, and nonconjectural." United States v. Pena, 961 F.2d 333, 399 (2d Cir. 1992).

It is not enough to establish standing for a defendant to simply repeat in an affidavit various government factual assertions made in earlier investigative reports without acknowledging their truthfulness. See United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) ("A defendant is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." (citation omitted)); United States v. Ruth, 65 F.3d 599, 605 (7th Cir. 1995) ("[I]t is [the defendant], not the government who bears the burden of establishing the privacy interest," and without an affidavit from the defendant is "almost impossible" to find that the defendant has a legitimate privacy interest in the place searched.) There must be sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge to prove facts necessary to support a defendant's professed subjective expectations and the overall reasonableness of his or her position. See United States v. Montoya-Eschevarria, 892 F. Supp. 104, 106 (S.D.N.Y. 1995); United States v. Gerena, 662 F. Supp. 1218, 1249-51, 1258 (D. Conn. 1987).

Here, the defendant has not established an expectation of privacy in the Gmail account, nor has he even claimed that the account belongs to him. For these reasons, the defendant has no standing to challenge the constitutionality of the search and seizure, see United States v. Pena, supra, 961 F.2d at 337, and his motion for suppression of evidence should, on that basis, be denied.

## 2. Search Warrant was Supported by Probable Cause

Even if the defendant does establish the requisite expectation of privacy in the Gmail account, the search warrant affidavit sufficiently established probable cause to search the Gmail account for fruits, instrumentalities and evidence of violations of Title 18, United States Code, Section 2339B. A search warrant may only be issued upon an affidavit which sets forth facts establishing probable cause. U.S. Const. amend. IV. Probable cause "need not be based on direct, first-hand, or 'hard' evidence." United States v. Thomas, 757 F.2d 1359, 1367 (2d Cir. 1985). It is axiomatic that a finding of probable cause requires a temporal link between the investigation of the alleged criminal conduct and the application for the search warrant. United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981). In assessing whether probable cause supported the issuance of a warrant to search a given location, the Court must consider whether the application in support of the warrant contained two factual showings -- "first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the [location]." Travisano, 724 F.2d at 345.

Once a search warrant has been issued, a reviewing court must accord substantial deference to the issuing judicial officer's prior finding of probable cause. The affidavit that supported the application "must be tested and interpreted by . . . courts in a common sense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108 (1965). The Second Circuit has summarized the principles that should guide a court in reviewing the probable cause determination of the judicial officer who issued the warrant:

> [The reviewing court's] after-the-fact examination of the papers is not to be de novo review. It should start with the proposition that the Magistrate's finding of probable cause is entitled to substantial deference. In fact, a search based upon a magistrate's determination will be upheld by a reviewing court on less

persuasive evidence than would have justified a police officer acting on his own. Further, the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of this warrant. This is particularly true in close cases where doubts should be resolved in favor of upholding the warrant.

Travisano, 724 F.2d at 345; see also United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993).

Here, Special Agent Amanda Pike's affidavit methodically detailed the information pertaining to the defendant's attempts to provide himself in support of ISIL between 2012 and 2015. Despite SA Pike's comprehensive affidavit, the defendant claims in conclusory fashion that the warrant application lacked probable cause; however, he does not even mention the serious allegations in the affidavit, including the defendant's multiple statements about his desire to follow the leader of ISIL, Abu Bakr al-Baghdadi; his prior trips to Turkey; his web searches while in Turkey about the best locations to enter Syria, where ISIL has its base of operations; and his false statements to law enforcement about the purpose for his trip to Turkey in 2014. Nor does the defendant address the eBay purchases, which included, among other things, a tactical vest with armor plates; a Shahada flag; Army combat boots; an Islamic headband; black Kevlar hard knuckle tactical gloves; night vision goggles; and body armor. Nor does he address the Twitter postings, which SA Pike linked to the defendant.

Finally, the defendant does not address the specific information in the affidavit addressing the defendant's alleged use of Facebook to communicate with people living in Syria. For instance, in paragraph 55 of the affidavit, USPER 1 told FBI agents that NAGI had made friends in Syria through Facebook and Twitter. USPER 1 further believed NAGI contacted these individuals through Facebook. USPER 3 also told agents that NAGI

5

showed USPER 3 videos of beheadings and executions, and was frequently on Twitter and Facebook.  See SA Pike's Aff. at ¶ 54.  SA Pike then explained to the magistrate judge that, based on her experience terrorist group facilitators often communicate with prospective jihadis through social media networks like Facebook.  Id. at ¶ 56.  SA Pike further explained to the magistrate judge why she believed the Gmail account contained information regarding her investigation of NAGI's attempts to join ISIL, including that the account was used as a repository for NAGI's Facebook postings.  Id. at ¶ ¶ 58, 59.  SA Pike also noted that these postings occurred during the few weeks prior to NAGI traveling to Turkey in 2014, see ¶ 59 of SA Pike's Affidavit.  According to SA Pike, these Facebook postings were related to a Facebook account that NAGI closed after his overseas activities came to the attention of the FBI.  The information contained in SA Pike's affidavit, when viewed in its totality, provided the required nexus between the crime under investigation and the defendant's Gmail account. See United States v. Singh, 390 F.3d 168, 182 (2d Cir. 2004) ("A showing of nexus does not require direct evidence and may be based on reasonable inference from the facts presented based on common sense and experience." (internal citations and quotations omitted)).

In conclusion, examining the entire affidavit in a common sense fashion, and affording the substantial deference to the Court's prior finding of probable cause to support the issuance of the search warrant, this Court must uphold the validity of the search warrant.

### 3. Even if the Search Warrant was Not Supported by Probable Cause, United States v. Leon Applies

A determination that a search warrant is not supported by probable cause does not automatically dictate suppression of all of the evidence seized. The Supreme Court has held that suppression is "'our last resort, not our first impulse'" in dealing with violations of the Fourth Amendment. Herring v. United States, 555 U.S. 135, 129 S. Ct. 695, 700 (2009) (quoting Hudson v. Michigan, 547 U.S. 586, 591 (2006)). Further, the exclusionary rule is not "'a personal constitutional right of the person aggrieved'" but rather "'a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect.'" United States v. Leon, 468 U.S. 897, 906 (1984) (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." Leon, 468 U.S. at 926. Consequently, if a law enforcement officer acts improperly and obtains otherwise unobtainable evidence as a result, the exclusionary rule exists to deter that improper behavior by excluding the resulting evidence from use against the defendant. Whether a court should employ the exclusionary rule varies with the extent of the police misconduct. See Herring, 129 S. Ct. 701 (suggesting that the deterrent effect of the exclusionary rule is most effective in cases of "'flagrant or deliberate violation of rights'").

The Leon good faith inquiry "is confined to the objectively ascertainable question whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization." Leon, 468 U.S. at 922 n.23 (emphasis added).

7

However, there are four circumstances where the good faith exception does not apply: "(1) where the issuing magistrate had been knowingly misled; (2) where the issuing magistrate has wholly abandoned his or her judicial role; (3) where the application is lacking in indicia of probable cause as to render reliance upon it unreasonable; and (4) where the warrant is so facially deficient that reliance upon it is unreasonable." United States v. Moore, 968 F.2d 216, 222 (2d Cir. 1992) (citing Leon, 468 U.S. at 923). Here, the defendant has not shown that any of exceptions apply, and therefore, for the reasons stated above, his motion to suppress must be denied.

DATED: Buffalo, New York, October 26, 2016

                                      WILLIAM J. HOCHUL, JR.
                                      United States Attorney

BY:   s/TIMOTHY C. LYNCH
       Assistant United States Attorney
       United States Attorney's Office
       Western District of New York
       138 Delaware Avenue
       Buffalo, New York 14202
       716/843-5846
       Timothy.Lynch@usdoj.gov