UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

**Hon. Hugh B. Scott**

v.                                                    **15CR148A**

**Report
&
Recommendation**

ARAFAT M. NAGI,

Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 13).  The instant matter before the Court is a second motion of defendant (Docket No. 46; cf. Docket No. 31) to suppress evidence, here evidence obtained from a search arising from a Google email address (hereinafter the "Gmail account").

Unlike the initial motion to suppress (Docket No. 31), this suppression motion focuses on the email account as being the source for the subsequent arrest and search.  On June 27, 2016, Magistrate Judge Michael Roemer issued a search warrant to search a Gmail account defendant claims was associated with him (Docket No. 46, Def. Atty. Affirm. ¶ 5).  Defendant argues that it was highly speculative that the Gmail account was linked to any criminal activity, in particular that this email account was associated with a Facebook account that allegedly was used by defendant to attempt to join a terrorist organization (id. ¶ 12).

The Government responded to the latest motion on October 26, 2016 (Docket No. 47), arguing that defendant failed to establish any expectation of privacy in the Gmail email account

or even claim that the email account belonged to him, thus lacking standing to challenge the

search warrant and subsequent search (Docket No. 47, Gov't Response at 2-3).  The Government

also contends that the search warrant was supported by probable cause, namely the affidavit of

Special Agent Amanda Pike describing "defendant's attempts to provide himself in support of

ISIL[1] between 2012 and 2015" (id. at 4-6, 5).  Finally, the Government concludes that, if the

warrant is found to lack probable cause, the search was conducted under an otherwise facially

valid warrant that the agents relied upon in good faith (id. at 7-8, see United States v. Leon,

468 U.S. 897, 926 (1984)).

This motion was argued on November 2, 2016, and defendant requested time to

supplement the motion (Docket No. 48).  Defendant initially was given until November 21,

2016, in order to supplement (id.) and later the deadline was extended to December 16, 2016

(Docket No. 49).  At a status conference held on an unrelated matter in this case on

December 21, 2016 (see Docket Nos. 50, 51), defendant declared that he would not supplement

his motion after all and that motion was deemed submitted as of that date (Docket No. 51).

Previously, defendant moved to dismiss the Indictment, to suppress evidence, and

(among other relief) the filing of a Bill of Particulars (Docket No. 31).  This Court issued a

Report and Recommendation (Docket No. 37) and Order (Docket No. 38), familiarity of which is

presumed, which addressed these initial motions.  The Report recommended denying defendant's

motion to dismiss the Indictment (Docket No. 37, Report & Rec. at 7-16), but ordered the

Government to produce a Bill of Particulars as to the conduct or statements manifesting

---

[1]"ISIL" is one name for the Islamic State of Iraq and the Levant, also known as the
Islamic State of Iraq and Syria or "ISIS".  Hereinafter, this Court will refer to the entity as
"ISIS".

defendant's intention to assist ISIS (id. at 17-20).  The Report also recommended denying

defendant's suppression motion, finding that there was sufficient probable cause for the search of

defendant's apartment (id. at 16-17, 2-4, 6).  The time for objections by the parties to this Report

was extended (Docket Nos. 40, 42 (Orders); Docket Nos. 39, 41 (motions for extension of time))

and so much of the Report ordering production of a Bill of Particulars was stayed pending further

proceedings (Docket No. 44; see Docket No. 46), with any objections following those further

proceedings being consolidated with those for the first Report and Order (Docket No. 44).

## BACKGROUND

As recounted in the first Report (Docket No. 37, at 1-4, 6), defendant is charged with

attempting to provide material support and resources to a foreign terrorist organization

(sometimes referred to as an "FTO"), in violation of 18 U.S.C. § 2339B(a)(1) (Docket No. 12,

Indictment).  It is alleged in Count 1 that, from November 2012 to August 2014, defendant

attempted to provide material support to the ISIS by providing himself as personnel.  He

allegedly knew that ISIS was designated as a foreign terrorist organization, which had engaged

in and was engaging in terror activities as defined in 8 U.S.C. § 1182(a)(3)(B), and had engaged

and was engaging in terrorism, as defined in 22 U.S.C. § 2656f(d)(2) (id., Count 1).  Count 2 of

the Indictment alleges that defendant attempted to provide material support to a foreign terrorist

organization, from early 2015 to July 29, 2015, in violation of 18 U.S.C. § 2339B(a)(1) (id.,

Count 2).

*Criminal Complaint (Docket No. 2)*

The Criminal Complaint filed in this action, however, provides extensive detail of

defendant's actions leading up to his arrest.  In support of the assertion of probable cause to

arrest defendant, Federal Bureau of Investigation Special Agent Amanda Pike stated that confidential informant "USPER1," a person previously convicted of terrorism offenses who was now cooperating with authorities, was interviewed by the Federal Bureau of Investigation ("FBI") and stated that defendant has talked about jihad to various people in Lackawanna, New York (Docket No. 2, Compl. ¶ 8).  USPER1 reported that, in August 2014, defendant traveled to Turkey, which was confirmed by searches of United States Customs and Border Protection records; these records reveal that defendant stayed in Turkey for ten days and then traveled to Yemen before returning to the United States (id. ¶¶ 9, 12, 13).  Agent Pike cites a second, Yahoo email account for defendant as the manner defendant contacted USPER1 (id. ¶ 9).  During an interview upon his return to the United States with U.S. Customs and Border Protection agents, defendant confirmed his travel to Turkey and Yemen but denied supporting ISIS, al Qaeda, or other mujahedeen groups (id. ¶ 13).  Agent Pike declared that this denial is inconsistent with defendant's statements on Twitter, conversations defendant had with others, and web searches performed on defendant's electronic devices (id.).  In all, defendant made three trips to Turkey, in 2012, 2013, and 2014, with stops in Yemen and Syria (id. ¶¶ 9, 12, 13, 14, 18, 31).

A search of defendant's electronic devices and the text messages from those devices reveals that defendant had a text exchange in 2013 possibly with his cousin who asked how defendant's trip to Turkey and Syria went (id. ¶ 16); this is the first reference to travel to Syria. Defendant purportedly responded that he had to leave early due to his gallbladder (id.).  When asked in another text why he was going into the Middle East and its wars, defendant replied that he wanted to help the Syrian people and that his "heart bleeds for them (. . .) Bad" (id. ¶ 17).

Agent Pike describes defendant's purchases from eBay of tactical vest, army combat shirt, body armor, the Shahada flag (a black flag containing the Islamic creed and a flag known to be used as a symbol by Islamic terror organizations), and combat boots before this October 2012 trip to Turkey (id. ¶¶ 18-19).  Defendant's shipping address for eBay was his home at 151 Olcott Street, Buffalo, New York (id. ¶ 19).

Agents searched social media for defendant's activity and found a Twitter account associated with defendant's email address (again the Yahoo account) contained postings in Arabic (id. ¶¶ 20-22).  Two posts (translated by an FBI linguist) stated that defendant gave his pledge "to hear and obey Abu Bakr al-Baghdadi," the so-called Caliph of ISIS, or pledged allegiance to the "prince of the believers al-Baghdadi" (id. ¶ 22), with Agent Pike concluding that defendant there had pledged allegiance to ISIS and al-Baghdadi (id.).  Some tweets included photographs showing ISIS fighters and al-Baghdadi (id. ¶ 23), severed heads, and ISIS prisoners about to be executed (id. ¶¶ 26-29).  The Twitter account was deactivated by September 25, 2014, with Agent Pike believing this was done by defendant upon his reentry into the United States and interview with Customs and Border Protection officers as an attempt to shield his prior pledge of allegiance from law enforcement (id. ¶ 30).

From another text exchange between defendant and a person believed to be his sister while defendant was in Turkey in 2014, Agent Pike concludes that defendant was attempting to enter Syria (id. ¶¶ 35-37; see id. ¶¶ 41-43 (search of electronic devices reveals defendant's attempts to travel to southernmost province of Hatay, Turkey, near the border with Syria)).  A review of defendant's web searches "also revealed several maps which appear to show ISIL controlled border crossings and strongholds" in Syria (id. ¶ 46, Figure 8).

The FBI interviewed USPER2, described as an associate of defendant (id. ¶ 47), who stated that in November 2014 defendant stated that he had pledged allegiance to ISIS leader al-Baghdadi (id. ¶ 49).  In February 2015, defendant told USPER2 that he intended to travel to Yemen, Turkey, then to Syria (id. ¶ 52).

The Criminal Complaint, however, does not reference a Gmail account or a related Facebook account.

On July 29, 2015, defendant was arrested and charged under the Criminal Complaint (Docket No. 47, Gov't Response at 1).  During that day, agents executed a search warrant of defendant's house, seizing "numerous pieces of electronic evidence, including numerous cell phones and several [laptop]" computers (id.).  On August 12, 2015, the Grand Jury returned the Indictment against defendant (id. at 2; Docket No. 12, Indict.).

*Initial Motion to Suppress*

Defendant moved to suppress physical evidence seized during the execution of the search and arrest warrants at 151 Olcott Street, Lackawanna, New York, on July 28, 2015 (Docket No. 31, Def. Motion ¶¶ 83-84, 87).  He contends that there was insufficient probable cause to believe that evidence would be found at that address (id. ¶¶ 89-90, 93-95), concluding that the fruit of the search should be suppressed (id. ¶ 96).  Defendant (through his counsel's affidavit, id. ¶ 85), asserted standing to seek suppression.

After disputing whether defendant (as opposed to defense counsel) asserted that he had standing (through his own affidavit or one from a person with personal knowledge) (Docket No. 35, Gov't Response at 22-23), the Government counters that defendant was arrested on the next day and the search warrant was executed at defendant's residence (id. at 1; see Docket

No. 3, Order of July 29, 2015).  During this search, agents seized cell phones, laptop computers,

finding on one computer a photograph of defendant wearing combat gear and standing in front of

a Shahada flag (Docket No. 35, Gov't Response at 2 & n.1).  Also found in a relative's house

was a sword and a Shahada flag that defendant stored there (id. at 2).

The search warrant application (as was the Criminal Complaint, Docket No. 2) was based

upon the statements of confidential informants "USPER1" and "USPER2" (Docket No. 31, Def.

Atty. Affirm. ¶ 89).  Defendant contends, however, that the probable cause basis for this warrant

was "pure conjecture and assumptions not grounded in fact or knowledge" (id. ¶ 90), arguing

that the warrant application failed to provide probable cause that evidence exists in the premises

which support or establish a violation of § 2339B(a)(1) (id. ¶ 93) with nothing in the application

tying the offense to this particular premises (id. ¶ 94).  Absent probable cause, defendant

concludes that the fruit of the search upon execution of that warrant should be suppressed (id.

¶¶ 95, 96), see United States v. Wong Sun, 371 U.S. 471, 487 (1963).

This Court recommended denying the suppression motion, finding that the search warrant

was based upon probable cause to search defendant's house (Docket No. 37, Report at 16-17).

*Pending Motion to Suppress Electronic Evidence*

Now before this Court is defendant's second suppression motion, here to suppress

evidence derived from a Gmail account that led to issuance of a search warrant on June 27, 2016

(Docket No. 46, Def. Atty. Affirm. ¶¶ 5-8).  Defendant also seeks either the unredacted warrant

application or in camera review of that unredacted application (id. ¶¶ 9-10).  Although this

search warrant was issued after his Indictment, defendant contends that the probable cause for

the Indictment may not support issuing a search of the Gmail account (id. ¶ 11), and it is

7

speculative whether that account was involved in any criminal activity (id. ¶ 12).  As noted above, the 2015 Criminal Complaint referenced a Yahoo email account and made no mention of Gmail or Facebook accounts.

## DISCUSSION

Personal email, or the contents of that email, is presumed to be read only by the intended recipient, similar to personal mail, United States v. Cioffi, 668 F. Supp. 2d 385, 390 n. 7 (E.D.N.Y. ) (citing United States v. Zavala, 541 F.3d 562, 577 (5th Cir. 2008); United States v. Forrester, 512 F.3d 500, 511 (9th Cir. 2008)).  Courts have found privacy interest in a person's email account, United States v. Warshak, 631 F.3d 266, 266 (6th Cir. 2010); In re Search of Premises Known as:  Three Hotmail Email Accounts, No. 16-MJ-8036-DJW, 2016 U.S. Dist. LEXIS 40545, at *25-26 & n.61 (D. Kan. Mar. 28, 2016) (Waxse, Mag. J.).

The threshold issue for a Fourth Amendment suppression motion is "whether the defendant has a legitimate expectation of privacy in the area searched," United States v. Smith, 621 F.2d 483, 486 (2d Cir. 1980), cert. denied, 449 U.S. 1086 (1981).  The issue here is defendant's standing to challenge the search warrant of the Gmail account; that is whether that account is owned by defendant.  Defendant was given the opportunity to supplement this motion to assert his standing but he declined to do so.

All that supports defendant's motion is his attorney's affirmation, stating that the Gmail account was "associated" with his client (Docket No. 46, Def. Atty. Affirm. ¶ 5) and that "defendant may have used the gmail account during the relevant time frame of the indictment is not probable cause to believe that the account was used for any illicit purpose" (id. ¶ 13), without any statement from a person knowledgeable of the facts (that is, the defendant himself) whether

8

he owned or used that Gmail account.  The motion does not detail how the Gmail account was "associated" with defendant.

Defendant has the burden of showing facts from someone with personal knowledge to support holding an evidentiary hearing, United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967) (Docket No. 47, Gov't Response at 2-3), here the fact whether defendant had a privacy interest in the Gmail account.  He also has the burden of establishing his privacy interest, in a sworn statement to that effect, United States v. Ruth, 65 F.3d 599, 605 (7th Cir. 1995) (id. at 3).

As the Government notes (id.), defendant has not shown that he even owned the Gmail account at issue, much less shown a privacy interest in the contents of that account.  Defendant's arguments were focused on the lack of clear proof of criminality arising from that account without stating (from a knowledgeable source) that it was defendant or he had some interest to exclude the world from its contents.  Defendant's motion to suppress (Docket No. 46) should be **denied**.

Given this recommendation, this Court need not reach the Leon good faith reliance upon the search warrant or the probable cause for issuance of the 2016 warrant.

## CONCLUSION

Based upon the above, it is recommended that defendant's second motion suppression motion (this time evidence obtained from search of the Gmail account) (Docket No. 46) should be **denied**.

9

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_

Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
         January 6, 2017