IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

              v.                            15-CR-148-A

ARAFAT NAGI,

              Defendant.

---

### GOVERNMENT'S RESPONSE TO
### DEFENDANT ARAFAT NAGI'S OBJCTIONS TO
### MAGISTRATE JUDGE SCOTT'S REPORTS AND RECOMMENDATIONS

**THE UNITED STATES OF AMERICA**, through its attorney, James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, and Timothy C. Lynch, Assistant United States Attorney, of counsel, hereby files its response to defendant Arafat Nagi's February 20, 2017 Objections to Magistrate Judge Hugh B. Scott's June 27, 2016 and January 6, 2017 Reports and Recommendations. See Filings 37 & 52. For the reasons set out below, the Court should deny the defendant's objections and adopt Judge Scott's recommendations that the defendant's motion to dismiss the Indictment be denied and that his motions to suppress evidence be denied.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

On July 29, 2015, the defendant was arrested and charged a Criminal Complaint with attempting to provide material support to a designated foreign terrorist organization, that is, Islamic State of Iraq and the Levant ("ISIL") a/k/a the Islamic State of Iraq and Syria ("ISIS") a/k/a ad-Dawla al-Islamiyya fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, in

violation of Title 18, United States Code, Section 2339B.   On the same date, Special Agents with the Federal Bureau of Investigation executed a search warrant at the defendant's residence.   During the course of the search of the defendant's residence, agents seized numerous pieces of electronic evidence, including numerous cell phones and several laptops. A forensic review of one of the laptops from the defendant's residence revealed a photograph of Arafat Nagi, standing in front of the Shahada flag,[1] dressed in combat gear with his face covered and holding what appears to be an AK-47.   In addition, from Nagi's relative's house, agents seized a sword and a Shahada flag that Nagi had stored there.

On August 12, 2015, a federal Grand Jury returned a two-count Indictment charging the defendant with two counts of attempting to provide material support to ISIL, in violation of 18 U.S.C. § 2339B.   Following the defendant's arraignment before United States Magistrate Judge Hugh B. Scott, the government provided the defense with voluminous discovery.   The defense thereafter filed pretrial motions, including a motion to dismiss the indictment, a motion to suppress evidence seized from 151 Olcott Street, Lackawanna, and a motion to suppress evidence seized from a Gmail account.

On June 27, 2016, Judge Scott issued a Report and Recommendation that the defendant's motion to dismiss the indictment be denied and that his motion to suppress evidence seized from 151 Olcott Street be denied.   See Filing 37.   On January 6, 2017, Judge

---

[1] The Shahada flag, a black flag typically showing the Islamic creed or "shahada" in white script, expressing "There is no god but Allah, and Muhammad is his messenger."   Although not inherently associated with violent jihad, the flag has been known to be commonly adopted for use by jihadist and Islamic terrorist organizations around the world (to include ISIL, Boko Haram, the Taliban, Jabhat al-Nusrah, etc.).

Scott issued another Report and Recommendation that the defendant's motion to suppress evidence seized from a Gmail account also be denied.   See Filing 52.   The defendant thereafter timely filed objections to Judge Scott's Reports and Recommendations.


## II.   STANDARD OF REVIEW

Title 28, United States Code, Section 636(b)(1)(B) authorizes the Magistrate Court, upon referral by the District Court, to conduct hearings and submit to this Court proposed findings of fact and recommendations of law for dispositive matters, including motions to suppress evidence.   The District Court may accept, reject, or modify, the findings set forth in the Magistrate Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1)(C).   When there are objections to the Magistrate Judge's Report and Recommendation, the Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections are made.   United States v. Clements, No. 11-CR-6104FPG, 2013 WL 441004, at *1 (W.D.N.Y. Feb. 5, 2013), aff'd, 590 F. App'x 105 (2d Cir. 2015).   In making its independent determination, "[i]t is sufficient that the district court 'arrive at its own, independent conclusion about those portions of the magistrate's report to which an objection is made . . . .'   To this end, the court must 'exercise . . . sound judicial discretion with respect to whether reliance should be placed on [the magistrate's] findings.'"   Nelson v. Smith, 618 F. Supp. 1186, 1189-90 (S.D.N.Y. 1985) (internal citations omitted).


## A.   MOTION TO DISMISS INDICTMENT

The defense objects to Judge Scott's finding that § 2339B is constitutional on its face, and as applied to the defendant, and his subsequent recommendation that the defendant's

motion to dismiss the Indictment should be denied.   In his objections, defense counsel acknowledges that the Supreme Court's decision in Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) and the Second Circuit's decision in United States v. Farhane, 634 F.3d 127 (2d Cir. 2011), which are binding on this Court, ruled that the material support statute is constitutional on its face.   In light of these rulings, the Court must adopt Judge Scott's recommendation that the material support statute is constitutional on its face, and therefore, the motion to dismiss the Indictment be denied.   See Farhane, 634 F.3d at 138 (holding that § 2339B does not criminalize mere membership in a terrorist organization; "[r]ather, the statute prohibits the knowing provision of material support to a known terrorist organization," and this knowledge requirement satisfies due process).

The defendant further argues that because the Indictment merely alleges that the defendant intended to provide "himself" to ISIS, he cannot be charged with attempting to provide material support to ISIS because the defendant's conduct in this case is protected by the First Amendment's rights to freedom of speech, religion and association.   (Filing 56 at pp. 3, 4).   The essence of the defendant's argument is that the material support statute is unconstitutional as applied to the facts of this case because he merely intended to provide "himself" to ISIS, and this action is protected by the First Amendment.   The defendant's actions that are the subject of this Indictment constitute much more than mere speech or mere association, and therefore, this Court should adopt Judge Scott's Report and Recommendation that the motion to dismiss be denied.

When a defendant challenges the constitutionality of a statute as being vague "as applied," the court must employ a two-part test: the court "must first determine whether the statute gives the person of ordinary intelligence a reasonable opportunity to know what is prohibited," and then the "court must consider whether the law provides explicit standards for those who apply it."   United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993) (internal citations and quotations omitted).   Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness.   See Village of Hoffman Estates, 455 U.S. at 495 n. 7, 102 S. Ct. at 1191 n. 7; Parker v. Levy, 417 U.S. 733, 756, 94 S. Ct. 2547, 2561, 41 L.Ed.2d 439 (1974).

The statute at issue is Title 18, United States Code, Section 2339B(a)(1), which prohibits providing "material support or resources to a foreign terrorist organization, or attempt[ing] or conspir[ing] to do so ..."   In order to violate this section, a person must have knowledge that the organization is a designated terrorist organization, that the organization has engaged or engages in terrorist activity, or that the organization has engaged or engages in terrorism.

"Material support or resources" includes providing personnel to a foreign terrorist organization (FTO).   Section 2339B's prohibition on providing personnel to an FTO is narrowly tailored.   The statute defines "personnel" as "1 or more individuals who may be or include oneself."   18 U.S.C. § 2339A(b).   In addition, § 2339B(h) limits liability for the provision of "personnel" as follows:

> No person may be prosecuted under this section [2339B] in connection with the term "personnel" unless that person has knowingly provided, attempted to

provide, or conspired to provide a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization.   Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control.

18 U.S.C. § 2339B(h).   Finally, Section 2339B further limits its application by stating "Nothing in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment of the Constitution of the United States."   18 U.S.C. § 2339B(i).


In Holder v. Humanitarian Law Project, 561 U.S. 1 (2010) (hereinafter cited as HLP), the Supreme Court rejected a challenge to the material support statute on First Amendment grounds because the statute is clear that it does not prohibit "independent advocacy" or mere association with a terrorist group.   HLP, 561 U.S. at 23, 39.   The Supreme Court found that the statute's explicit limitations were "significant," and showed "that Congress ha[d] been conscious of its own responsibility to consider how its actions may implicate constitutional concerns."   HLP, 561 U.S. at 35-36.   The Supreme Court further found the material support statute does not suppress political speech, even if it is unpopular; rather, Congress

prohibited "material support," which most often does not take the form of speech at all.   And when it does, the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations.

Id. at 26.   See United States v. Farhan, 634 F.3d 127, 138 (2011) (rejecting the defendant's claim that the material support statute "is either facially vague in violation of due process or overbroad in violation of the First Amendment"); Holy Land Found. for Relief & Dev. v. Ashcroft, 333 F.3d 156, 166 (D.C. Cir. 2003) (holding "as other courts have," with respect to

a First Amendment right to association claim, that "there is no First Amendment right nor any other constitutional right to support terrorists").

The charged conduct in this case falls squarely within the core of what is prohibited under § 2339B.  See Farhane, 634 F.3d at 141 (finding that the defendant's conduct, "whether viewed as training, personnel, or expert assistance, fell so squaring within the core of § 2339B's prohibition, the application of that law to his conduct cannot have been the product of arbitrary law enforcement.").  The government expects the evidence at trial will prove that defendant intended to provide himself to ISIL as a fighter, knew and intended that he would obey ISIL's leadership, and knew well that ISIL engages in terrorism.[2]  The government's proof will also include the defendant's Twitter pledge to support Abu Bakr al-Baghdadi,[3] the leader of ISIL; the defendant's numerous Twitter posts regarding ISIL's terroristic activities, including killings and beheadings; and the defendant's numerous statements to others about ISIL's activities and his support of ISIL.  The government will also prove that the defendant prepared to provide himself to ISIL by buying combat gear through eBay, including night vision googles and body armor, by going to a shooting range, by seeking advice from an individual, who had previously attended a terrorism training camp,

---

[2] The government has not set forth what can be characterized as a "full proffer of the evidence it intends to introduce at trial," Alfonso, 143 F.3d at 777-78, and therefore, it would be inappropriate of the Court to consider the sufficiency of the government's evidence as to the counts of the Indictment.  Id.  Nevertheless, the government's summary of its anticipated evidence demonstrates that the defendant's motion to dismiss on First Amendment grounds should be denied.

[3] Abu Bakr al-Baghdadi is a reference to Ibrahim 'Awaad Ibrahim 'Ali al-Badri a/k/a Abu Du'a a/k/a Amir al-Mu-minin Caliph Ibrahim a/k/a Abu Bakr al-Baghdadi al-Husseini al-Qurashi.  Al-Baghdadi is the self-proclaimed Caliph of the Islamic State (a/k/a ISIL (Islamic State of Iraq and the Levant) a/k/a ISIS (Islamic State of Iraq and al Sham).

and by traveling to Turkey as part of his plan to enter Syria to join ISIL.   In addition, during a search of the defendant's computer, agents seized a photograph of the defendant dressed in combat gear, holding what appears to be an AK-47, and standing in front of the Shahada flag, which is used by ISIL and other terrorist groups.   Finally, the government intends to introduce text messages between the defendant and a family member, which were sent just hours before the defendant's trip in July 2014 to Turkey.   In the messages, the defendant makes references to possibly never seeing his family again.

Based on this anticipated evidence, it is clear the government is not prosecuting the defendant based on mere speech or mere association with a terrorist group.   As such, in accordance with Supreme Court and Second Circuit precedent, the defendant's vagueness challenge should be rejected and his motion to dismiss the Indictment should be denied.

## B.     MOTIONS TO SUPPRESS

Defendant next objects to Magistrate Judge Scott's recommendations that the defendant's motions to suppress evidence seized from 151 Olcott Street, Lackawanna, New York and from a Gmail account[4] be denied.   The defendant's objections, however, lack any clarity and specificity.   For example, his objections do not pertain to any specific portions of Judge Scott's Reports and Recommendations, let alone provide any legally support for his position that Judge Scott's recommendations are legally erroneous.   Despite this obvious infirmity, the government will now demonstrate that Judge Scott's Report and Recommendations should be adopted by this Court.

---

[4] The Gmail account at issue is **arafathashidy@gmail.com**.

1.      **151 Olcott Street, Lackawanna, New York**

As Judge Scott found the search warrant affidavit sufficiently established probable cause to search 151 Olcott Street for fruits, instrumentalities and evidence of violations of Title 18, United States Code, Section 2339B.[5]    A search warrant may only be issued upon an affidavit that sets forth facts establishing probable cause.    U.S. Const. amend. IV.    Probable cause "need not be based on direct, first-hand, or 'hard' evidence."    United States v. Thomas, 757 F.2d 1359, 1367 (2d Cir. 1985).    It is axiomatic that a finding of probable cause requires a temporal link between the investigation of the alleged criminal conduct and the application for the search warrant.    United States v. Button, 653 F.2d 319, 324 (8th Cir. 1981).    In assessing whether probable cause supported the issuance of a warrant to search a given residence, the Court must consider whether the application in support of the warrant contained two factual showings -- "first, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence." Travisano, 724 F.2d at 345.

---

[5] Although not addressed by Judge Scott, he could have additionally found that the defendant did not establish the requisite expectation of privacy in the premises at 151 Olcott Street, which he shared with other family members.   To be entitled to an evidentiary hearing, a defendant must make a preliminary showing of facts, which if proved, would necessitate the granting of the relief requested.   To meet that burden the defendant must submit his own affidavit or an affidavit from a person who has personal knowledge of the relevant facts. United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967).   And if an affidavit is submitted, it must be "specific, detailed, and nonconjectural."   United States v. Pena, 961 F.2d 333, 399 (2d Cir. 1992).   The defendant never submitted such an affidavit, and therefore, the defendant has no standing to challenge the constitutionality of the search and seizure, see United States v. Pena, supra, 961 F.2d at 337, and his motion for suppression of evidence could have been denied on that basis.

Once a search warrant has been issued, a reviewing court must accord substantial deference to the issuing judicial officer's prior finding of probable cause. The affidavit that supported the application "must be tested and interpreted by . . . courts in a common sense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108 (1965). The Second Circuit has summarized the principles that should guide a court in reviewing the probable cause determination of the judicial officer who issued the warrant:

> [The reviewing court's] after-the-fact examination of the papers is not to be de novo review. It should start with the proposition that the Magistrate's finding of probable cause is entitled to substantial deference. In fact, a search based upon a magistrate's determination will be upheld by a reviewing court on less persuasive evidence than would have justified a police officer acting on his own. Further, the magistrate's finding of probable cause is itself a substantial factor tending to uphold the validity of this warrant. This is particularly true in close cases where doubts should be resolved in favor of upholding the warrant.

Travisano, 724 F.2d at 345; see also United States v. Rosa, 11 F.3d 315, 326 (2d Cir. 1993).

Here, Special Agent Amanda Pike's affidavit methodically detailed the information pertaining to the defendant's attempts to provide himself in support of ISIL between 2012 and 2015. Despite SA Pike's comprehensive affidavit, the defendant contends that because the probable cause was based on the "defendant's allegiance and willingness to join the foreign terrorist organization," Filing 56 at p. 4, that is an insufficient basis to support the search warrant. However, defense counsel does not even mention the serious allegations in the affidavit, including the defendant's multiple statements about his desire to follow the leader of ISIL, Abu Bakr al-Baghdadi; his prior trips to Turkey; his web searches while in Turkey about the best locations to enter Syria, where ISIL has its base of operations; and his false statements to law enforcement about the purpose for his trip to Turkey in 2014. Nor does

the defendant address the eBay purchases, which included, among other things, a tactical vest

with armor plates; a Shahada flag; Army combat boots; an Islamic headband; black Kevlar

hard knuckle tactical gloves; night vision goggles; and body armor.   Finally, he does not

address the Twitter postings, which SA Pike linked to the defendant.   For example, the

following tweets from NAGI's Twitter account were detailed in the affidavit:

> On Thursday, May 15, NAGI posted a photo of an individual being beheaded,
> and the following text: "Today, this filth has been killed in the state of Hums.
> He waged a tougher war against Muslims. It is your paradise, rather,
> slaughter."

> Also on Thursday, May 15, NAGI posted a photo appearing to depict an
> individual about to be executed by two individuals (one holding a firearm, the
> other holding a large butcher knife) and text indicating "And over here, the
> Mujahidin give options to the Denying soldier, be killed by bullets or by knife;
> and they say that the State does not have freedom of choice."

> On Sunday, May 18, NAGI tweeted a photo of three severed heads and text
> (in Arabic), "God is the Greatest. The three heads, those who dug their graves
> by their own hands."

Examining the entire affidavit in a common sense fashion, and affording substantial

deference to the Court's prior finding of probable cause to support the issuance of the search

warrant, this Court should adopt Judge Scott's decision finding that there was sufficient

probable cause to issue the search warrant for 151 Olcott Street.   If the court believes Judge

Scott's decision in this regard was erroneous, the government requests the opportunity to

establish that the Leon exception applies, and therefore, the suppression of evidence is not

appropriate.

2.    **Gmail Warrant**

As Judge Scott found, the defendant did not establish an expectation of privacy in the Gmail account, and therefore, the defendant's motion to suppress should be denied.    To be entitled to an evidentiary hearing, a defendant must make a preliminary showing of facts, which if proved, would necessitate the granting of the relief requested.    To meet that burden, the defendant must submit his own affidavit or an affidavit from a person who has personal knowledge of the relevant facts.    United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967).    And if an affidavit is submitted, it must be "specific, detailed, and nonconjectural." United States v. Pena, 961 F.2d 333, 399 (2d Cir. 1992).

It is not enough for a defendant to establish standing by simply repeating in an affidavit various government factual assertions made in earlier investigative reports without acknowledging their truthfulness.    See United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) ("A defendant is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." (citation omitted)); United States v. Ruth, 65 F.3d 599, 605 (7th Cir. 1995) ("[I]t is [the defendant], not the government who bears the burden of establishing the privacy interest," and without an affidavit from the defendant is "almost impossible" to find that the defendant has a legitimate privacy interest in the place searched.)    There must be sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge to prove facts necessary to support a defendant's professed subjective expectations and the overall reasonableness of his or her position.    See United States v. Montoya-Eschevarria, 892 F.

Supp. 104, 106 (S.D.N.Y. 1995); United States v. Gerena, 662 F. Supp. 1218, 1249-51, 1258 (D. Conn. 1987).

Here, the defendant has not established an expectation of privacy in the Gmail account, nor has he even claimed that the account belongs to him.   Even when given an opportunity to file an affidavit establishing his interest in the Gmail account, see Docket Entries 48 & 49, the defendant made a conscious decision not to establish an expectation of privacy in the Gmail account.   Nor does he even claim in his objections that he had an expectation of privacy in the Gmail account.   Rather, he claims in conclusory fashion that the warrant should be invalidated because the material support statute is unconstitutional. This claim is contrary to the law.   Because the defendant has no standing to challenge the constitutionality of the search and seizure, see United States v. Pena, supra, 961 F.2d at 337, his motion for suppression of evidence should be denied on that basis.

Even if, however, the defendant had established the requisite expectation of privacy in the Gmail account, the defendant's motion to suppress should be denied because the affidavit amply supplied the necessary probable cause to support the issuance of the warrant.   See Filing 47 (Government's Response to Defendant's Motion to Suppress).   Simply put, examining the entire affidavit in a common sense fashion, and affording the substantial deference to the Court's prior finding of probable cause to support the issuance of the search warrant, this Court must uphold the validity of the search warrant.

### III.   **CONCLUSION**

For the foregoing reasons, this Court should adopt Judge Scott's recommendations that the defendant's motion to dismiss the Indictment be denied and that the defendant's motions to suppress evidence be denied.


DATED:   Buffalo, New York, March 17, 2017


JAMES P. KENNEDY, JR.
Acting United States Attorney


BY:   s/TIMOTHY C. LYNCH
Assistant United States Attorney
United States Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York   14202
716/843-5846
Timothy.Lynch@usdoj.gov