IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



UNITED STATES OF AMERICA,

     v.

ARAFAT M. NAGI,

     Defendant.

15-CR-148-A

## PLEA AGREEMENT

The defendant, **ARAFAT M. NAGI**, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1. The defendant agrees to plead guilty to Count 1 of the Indictment which charges a violation of Title 18, United States Code, Section 2339B(a)(1) (attempting to provide material support to a designated foreign terrorist organization) for which the maximum possible sentence is a term of imprisonment of 15 years, a fine of $250,000, a mandatory $100 special assessment and a term of supervised release of life. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

3. The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a. That on or about the dates charged in the Indictment, the defendant knowingly attempted to provide material support and resources, that is, personnel to a foreign terrorist organization, that is, ISIL/ISIS;

   b. That the defendant knew the organization was a designated terrorist organization, or that the organization had engaged in or was engaging in terrorist activity and terrorism; and

   c. That the defendant is a United States national.

## FACTUAL BASIS

4. The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

   a. From in or about November 2012 to in or about August 2014, the exact dates being unknown, in the Western District of New York, and elsewhere, the defendant, **ARAFAT M. NAGI**, a citizen of the United States, knowingly did attempt to provide material support and resources, that is, personnel, specifically himself, to a designated foreign terrorist organization, namely, the Islamic State of Iraq and the Levant ("ISIL") a/k/a the Islamic State of Iraq and al-Sham ("ISIS"), knowing that ISIL/ISIS was a designated foreign terrorist organization, had

2

engaged, and was engaging, in terrorist activity, and had engaged, and was engaging in, terrorism.

b. Beginning in November 2012, after the defendant failed to enter Syria a month earlier due to a gallbladder infection, the defendant began making preparations for another trip to Syria so he could join ISIL/ISIS. As part of his preparations before the October 2012 trip, the defendant sought advice from an individual regarding the type of clothing and supplies that he would need if he had to live outdoors. The defendant's preparations also included purchasing combat and survivalist gear through eBay, including tactical gloves, a face mask, a hunting knife, a burn kit, a black Shahada flag, which is the flag used by ISIL/ISIS, camouflage pants, night vision goggles and a camouflage shirt. In early 2012, the defendant also purchased through eBay a tactical vest with armor plates, combat boots and body armor plates. During a search of the defendant's computer, a photo was retrieved depicting the defendant dressed in combat gear, holding an AK-47 and standing in front of the Shahada flag.

c. Beginning in late 2013, the defendant activated a Twitter account, which he used as a platform to announce his formal pledge to Abu Bakr al-Baghdadi, the leader of ISIL/ISIS, to extoll his Twitter followers to support ISIL/ISIS, and to display photographs depicting individuals who were killed by members of ISIL/ISIS. These posts included the following:

   i. <u>January 11, 2014</u> - I am Abu Amir al-Yemeni of the Quhayf tribe, and give my pledge to hear and obey Abu Bakr al-Baghdadi.
   ii. <u>April 15, 2014</u> - Whose wisdom is better than God's? The Islamic State of Iraq and the Levant.
   iii. <u>April 25, 2014</u> - Swear your allegiance to the prince of the believers al-Baghdadi, may God protect him. May you perish in your resentment, you traitors.

d. Between November 2012 and July 2014, the defendant regularly spoke to some of his family members and a friend about ISIL/ISIS, his allegiance to al-Baghdadi and his desire to join the ISIL/ISIS to create an Islamic State. Furthermore, the defendant regularly viewed videos and photographs created by ISIL/ISIS depicting their terrorist activities, including beheadings. The defendant also told family members that he intended to die a warrior's death in Syria.

e. On July 24, 2014, the defendant left the United States for Turkey. When he left, he was in possession of night vision goggles, which he intended to use in Syria. Once he arrived in Istanbul, Turkey, the defendant

      conducted internet research regarding transportation to, and hotels in, Iskenderun, Turkey, which is located near the Syrian border. He also researched border crossings into Syria from Turkey. The defendant discarded the SIM card to his Nokia cellular telephone in Istanbul and never went to Syria, because he was concerned he was under surveillance by United States and Turkish law enforcement. On August 4, 2014, the defendant left Turkey for Yemen, where he stayed for approximately 6 weeks before returning to the United States.

f.    Once the defendant returned, he began making plans to return to Turkey so he could make another effort to enter Syria. Between late 2014 and early 2015, the defendant expressed his support of ISIS's violent activities to Person 1, including his support for the burning of a Jordanian pilot. During these discussions, the defendant asked Person 1 whether Person 1 was interested in going with him to Syria. In July 2015, the defendant went to Person 2 to make arrangements to purchase an airline ticket for a trip to Turkey, so that he could enter Syria. On July 29, 2015, the defendant was arrested by the FBI.

g.    The parties agree that during the time period charged in Count 1 of the Indictment, the Islamic State of Iraq and the Levant ("ISIL/ISIS") was a designated foreign terrorist organization. The parties also agree that during this time period, the defendant was aware of ISIL/ISIS's designation as a foreign terrorist organization, as well as ISIL/ISIS's terrorist activities.

### III.   SENTENCING GUIDELINES

5.    The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVEL

6.    The government and the defendant agree that Guidelines § 2M5.3(a) applies to the offense of conviction and provides for a base offense level of 26.

## SPECIFIC OFFENSE CHARACTERISTICS

7. The government and the defendant agree that the following specific offense characteristic does apply:

   a. the 2-level increase pursuant to Guidelines § 2M5.3(b)(1)(E) (offense involved material support with the intent, knowledge or reason to believe they are to be used to commit or assist in the commission of a violent act).

## U.S.S.G. CHAPTER 3 ADJUSTMENTS

8. The government and the defendant agree that the following adjustment to the base offense level does apply:

   a. The 12-level upward adjustment of Guidelines § 3A1.4(a) (offense is a felony that involved, or was intended to promote, a federal crime of terrorism).

## ADJUSTED OFFENSE LEVEL

9. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **40**.

## ACCEPTANCE OF RESPONSIBILITY

10. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of 37.

## CRIMINAL HISTORY CATEGORY

11. Based on the application of Guidelines § 3A1.4(b), it is the understanding of the government and the defendant that the defendant's criminal history category is VI.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

12. It is the understanding of the government and the defendant that, with a total offense level of 37 and criminal history category of VI, and taking into account the statutory maximum penalties, the defendant's sentencing range would be a term of imprisonment of 180 months, a fine of $40,000 to $250,000 and a period of supervised release of 1 year to life. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13. The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above. The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

14. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.  STATUTE OF LIMITATIONS

15. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other federal criminal offense, which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.  GOVERNMENT RIGHTS AND RESERVATIONS

16. The defendant understands that the government has reserved the right to:

a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c. advocate for a specific sentence consistent with the terms of this agreement; and

d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

17. At sentencing, the government will move to dismiss the remaining count of the Indictment in this action.

18. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI. APPEAL RIGHTS

19. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court, which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

20. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

21. The government waives its right to appeal any component of a sentence imposed by the Court, which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 12, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VII. **FORFEITURE PROVISIONS**

22. The defendant, **ARAFAT M. NAGI**, from his conviction under Count 1 agrees to criminally forfeit all of his interest in the following property to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(G) and Title 28, United States Code, Section 2461(c) as to any asset derived from, involved in, or used or intended to be used to commit any crime of federal crime of terrorism against the United States, including but not limited to:

**Personal Property:**

The items listed in Exhibit "A" attached hereto and made a part of this Plea Agreement. Said items being seized by law enforcement on or about July 29, 2015, and on or about September 19, 2014, and currently in the custody of the federal government.

23. The defendant warrants and represents that the above property represents or was purchased using the proceeds of the offense that the defendant is pleading guilty to in this Plea Agreement and thus is forfeitable to the United States. The defendant agrees to the entry of a <u>Preliminary and Final Order of Forfeiture</u> forfeiting the defendant's interest in the property identified above. The defendant further consents and agrees that the Order of

Forfeiture shall become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant' sentence and included in the Judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure.

24. Defendant acknowledges that he understands that the criminal forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the court to advise him of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted or for the Indictment to list such property pursuant to Rule 32.2 (a) of the Federal Rules of Criminal Procedure.

25. The defendant knowingly, intelligently, and voluntarily waives his right to a jury trial on the forfeiture of the assets and imposition of a civil penalty. Defendant knowingly, intelligently, and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture in any proceeding, including any jeopardy defense or claim of double jeopardy, whether constitutional or statutory, as to this criminal proceeding or any related civil or administrative proceeding. Defendant further agrees to waive any claim or defense under the Eighth Amendment to the United States Constitution, including any claim of excessive fine regarding the forfeiture of assets by the United States.

26. The defendant further agrees that the forfeiture of the aforementioned assets as authorized herein shall not be deemed an alteration of the defendant's sentence. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to

forfeiture. The defendant freely, voluntarily, knowingly, and intelligently waives any right to appeal or collaterally attack any matter in connection with this prosecution and sentence, including the forfeiture of assets as provided above.

27.   The defendant freely, voluntarily, knowingly, and intelligently waives any right to appeal or collaterally attack any matter in connection with this prosecution and sentence, including the forfeiture of assets as provided above.

## VIII.   TOTAL AGREEMENT AND AFFIRMATIONS

28.   This plea agreement represents the total agreement between the defendant, ARAFAT M. NAGI, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY: _____
TIMOTHY C. LYNCH
Assistant United States Attorney

Dated: January 22, 2018

11

I have read this agreement, which consists of 12 pages. I have had a full opportunity to discuss this agreement with my attorney, JEREMY SCHWARTZ, Esq. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
ARAFAT M. NAGI
Defendant

Dated: January 22, 2018

_____
JEREMY SCHWARTZ, ESQ.
Attorney for the Defendant

Dated: January 22, 2018

## **United States v. Arafat Nagi, 15-CR-148-A**

## EXHIBIT A

1. Apple iPhone, bearing IMEI number 013330009211323

2. Apple iPad, bearing IMEI number DMPHQRSNDVGG

3. Nokia 909 cellular telephone, bearing IMEI number 356699051804291

4. ISIS flag, headbands, and t-shirt bearing the ISIS symbol

5. Hi-Point, Model 4595, .45 caliber rifle, bearing serial number R08853, with 7 rounds of .40 caliber ammunition and fire control item for firearm

6. HP laptop, bearing serial number 5CB20203SF

7. Toshiba laptop, bearing serial number 98032952Q

8. Samsung laptop, bearing serial number HLHA93QB903414B

9. Sony Cybershot Digital Camera, bearing serial number 0349417

10. LG tablet model LG-V410

11. Tactical gloves

12. Various knives and swords seized from 151 Olcott Street, Lackawanna, New York on July 29, 2015